FILED

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION

02 SEP 26 AM 10: 55

U.S. DISTRICT COURT
N.D. OF ALABAMA

PHILLIP HOLLINGSWORTH,           )
                                 )
        Plaintiff,               )
                                 )
v.                               )        CASE NO. CV 01-B-0359-NE
                                 )
TENNESSEE VALLEY AUTHORITY,      )
                                 )        **ENTERED**
        Defendant.               )
                                          SEP 26 2002

## MEMORANDUM OPINION

Currently before the court is a Motion to Dismiss Amended Complaint filed by

Defendant Tennessee Valley Authority ("defendant" or "TVA"). In his amended complaint,

Plaintiff Phillip Hollingsworth ("plaintiff" or "Hollingsworth") asserts claims under a Collective

Bargaining Agreement and pursuant to the Federal Arbitration Act and Federal Mandamus Act.

Upon consideration of the record, the submissions of the parties, the argument of counsel, and

the relevant law, the court is of the opinion that all of plaintiff's claims are due to be dismissed.

## I. APPLICABLE LEGAL STANDARD

Although this case has come before the court on a motion to dismiss, both parties have

submitted and relied upon materials outside of the pleadings. Therefore the court will apply the

standard for summary judgment under Rule 56 of the Federal Rules of Civil Procedure. *See*

FED. R. CIV. P. 12(b)(6). Summary judgment is appropriate when "there is no genuine issue as

to any material fact and . . . the moving party is entitled to a judgment as a matter of law." FED.

R. CIV. P. 56(c). The party asking for summary judgment bears the initial burden of showing

that no genuine issues exist. *See Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir.

1991); *see Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). Once the moving party has

$\mathcal{A}1$

met his burden, Rule 56(e) requires the nonmoving party to go beyond the pleadings and show that there is a genuine issue for trial. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 324 (1986).  A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

In deciding a motion for summary judgment, the judge's function is not to "weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Id.* at 249.  Credibility determinations, the weighing of evidence, and the drawing of inferences from the facts are left to the jury, and therefore the evidence of the nonmovant is to be believed and all justifiable inferences are to be drawn in his favor. *See id.* at 255.  Nevertheless, the nonmovant need not be given the benefit of every inference but only of every *reasonable* inference. *See Brown v. City of Clewiston*, 848 F.2d 1534, 1540 n.12 (11th Cir. 1988).

## II.  SUMMARY OF FACTS

Plaintiff has worked for TVA as an engineer since 1980.  (Am. Compl. ¶ 4.)  On May 26, 2000, plaintiff's supervisor accused him of leaving his job at TVA's Browns Ferry Nuclear Plant ("Browns Ferry") without permission on numerous occasions.  (Hollingsworth Aff. ¶ 3.)  On or about June 19, 2000, plaintiff received a letter notifying him that his employment would be terminated on July 20, 2000, for "falsification of [] hours worked and leave taken."  (1st McClure Decl. ¶ 3, Ex. 2 at 1.)  Upon receiving the termination notice, plaintiff discussed his "appeal options with Mr. Steve Locke of the Engineering Association, Inc.," his job steward. (Hollingsworth Aff. ¶ 6.)

According to plaintiff, Locke told him that he had two avenues for appealing the decision:  the grievance process at TVA and appeal to the U.S. Merit Systems Protection Board

("MSPB"). (*Id.*) Plaintiff testified that Locke recommended appeal to the MSPB. (*Id.*) Plaintiff also testified that Locke told him that he "must wait until after the effective date of termination before [he] could file an appeal with MSPB." (*Id.* ¶ 7.) Plaintiff testified that after his discussion with Locke, he called the MSPB and spoke to someone who told him that he "could appeal within 30 days after the effective date of the termination, but [] could not appeal to them before that time." (*Id.*) Within two days of the phone call, plaintiff received an appeal form from the MSPB notifying him that he must file his appeal "during the period beginning with the day after the effective date of the action [he was] appealing and ending on the 30th day after the effective date." (*Id.*, Ex. 1 at 1.)

On August 12, 2000, plaintiff filed a timely appeal to the MSPB. (*Id.* ¶ 10.) On or about August 23, 2000, plaintiff received an MSPB Acknowledgment Order stating that plaintiff did not appear to be a veteran[1] and that "[n]on-veteran TVA employees do [n]ot have appeal rights to the Board from adverse actions." (*Id.* ¶ 11, Ex. 2 at 2.) According to plaintiff, that was the first time he learned that the MSPB did not have jurisdiction over the claims of non-veterans.[2] (*Id.* ¶ 11.)

On September 8, 2000, plaintiff filed a notice of grievance with TVA pursuant to section S-11 B of the collective bargaining agreement between TVA and Engineering Association, Inc. ("the collective bargaining agreement"). (*Id.*; *see* 1st McClure Decl., Ex. 2 at 2.) On September

---

[1] Plaintiff is not a veteran.

[2] By letter dated September 11, 2000, TVA filed a letter in opposition to plaintiff's appeal with the MSPB stating that the MSPB does not have jurisdiction because plaintiff is not a veteran. (Hollingsworth Aff. ¶ 12, Ex. 3.) On September 20, 2000, the MSPB dismissed plaintiff's appeal for lack of jurisdiction. (*Id.* ¶ 13; *see* Cherry Decl. ¶ 2, Ex. A.)

12, 2000, TVA management issued a decision denying plaintiff's grievance because plaintiff did not file a timely grievance and because plaintiff had appealed his termination to the MSPB. (Hollingsworth Aff. ¶ 11; *see* 1st McClure Decl., Ex. 2 at 2-3). Section S-11 B of the collective bargaining agreement states that grievance forms "must be filed within 20 calendar days after the employee learns of the action or proposed action." (1st McClure Decl., Ex. 1.) TVA management's decision states that because plaintiff's grievance was prepared on September 7, 2000, which is eighty days from his termination notice and forty-nine days after the effective date of his termination, the grievance is untimely. (*Id.*, Ex. 2 at 3.) Section S-11 I of the collective bargaining agreement states:

> If an appeal or formal complaint with respect to an action, matter, or proposed action is or has been filed under a separate procedure provided by law or federal regulation, a grievance regarding such action, matter, or proposed action will not be considered or, if in process, will not be further considered or decided under this Agreement.

(*Id.*, Ex. 1.) TVA's decision states that because plaintiff "filed an appeal to the United States Merit Systems Protection Board on August 11, 2000, concerning [his] termination and placement in non-pay, non-duty status . . . it is also inappropriate to process [his] grievance according to S-11 I." (*Id.*, Ex. 2 at 3.)

On September 27, 2000, the Engineering Association appealed management's decision pursuant to S-11 C of the collective bargaining agreement. (*Id.*, Ex. 2 at 4.) TVA issued a second decision holding that there was nothing to review because plaintiff had appealed the termination decision to the MSPB. (*Id.*, Ex. 2 at 5.) On November 1, 2000, the Engineering Association notified TVA that it was appealing the decision to arbitration in accordance with S-11 D of the Agreement. (*Id.*, Ex. 2 at 6.) On December 11, 2000, TVA management refused to

arbitrate, stating that because plaintiff's grievance was not decided under S-11 C of the collective bargaining agreement, TVA's decision may not be appealed to arbitration pursuant to S-11 D.  (*Id.*, Ex. 2 at 7.)

On February 7, 2001, plaintiff filed this action claiming that TVA had breached the collective bargaining agreement in contravention of the Labor Management Relations Act.  (*See* Compl. at 5.)  The court granted TVA's motion to dismiss on the ground that there can be no claim against TVA under the Labor Management Relations Act, but granted plaintiff leave to amend his complaint.  Plaintiff amended his complaint to assert a claim for breach of the collective bargaining agreement, and to compel arbitration pursuant to the Federal Arbitration Act and the Federal Mandamus Act.

### III.  DISCUSSION

#### A.  Failure to Exhaust Administrative Remedies

Although Section 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185, does not apply to TVA, the body of federal law developed pursuant to the LMRA generally governs claims against TVA for alleged violations of its collective bargaining agreements.  *Int'l Ass'n of Machinists & Aerospace Workers v. TVA*, 108 F.3d 658, 664 (6th Cir. 1997)*, see Hester v. Int'l Union of Operating Eng'rs*, 941 F.2d 1574, 1580 (11th Cir. 1991).  Generally, federal courts have no jurisdiction to review a government agency's employment decision unless the claimant has pursued and exhausted his administrative remedies.  *Thurman v. TVA*, 533 F.2d 180, 181 (5th Cir. 1976)[3] (ruling that in cases involving the

---

[3] The Eleventh Circuit has adopted as binding precedent all decisions of the former Fifth Circuit rendered prior to October 1, 1981.  *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981).

termination of federal employment, the scope of judicial review is limited to determining whether the administrative action has complied with the requisite procedural due process or whether the administrative action is arbitrary or capricious); *Chiriaco v. United States*, 235 F. Supp. 850, 854 (N.D. Ala. 1963) ("Where a complaining federal employee has failed to exhaust his administrative remedies the courts will not review his complaints."), *aff'd*, 339 F.2d 588 (5th Cir. 1964). "[F]ederal labor policy requires that individual employees wishing to assert contract grievances must attempt use of the contract grievance procedure agreed upon by employer and union as the mode of redress." *Republic Steel Corp. v. Maddox*, 379 U.S. 650, 652 (1965). An employee "is generally barred from bringing suit unless and until he has resorted to all of the dispute resolution procedures specified in the collective bargaining agreement." *Samples v. Ryder Truck Lines, Inc.*, 755 F.2d 881, 885 (11th Cir. 1985). Because plaintiff failed to timely pursue his remedies under the grievance process set out in the collective bargaining agreement, his claims against TVA are due to be dismissed.

On or about June 19, 2000, plaintiff received a letter notifying him that his employment would be terminated on July 20, 2000. (1st McClure Decl., Ex. 2 at 1.) Section S-11 B of the Agreement states that grievance forms "must be filed within 20 calendar days after the employee learns of the action or proposed action." (*Id.*, Ex. 1.) Plaintiff's grievance was prepared on September 7, 2000, which is about eighty days from his termination notice and forty-nine days after the effective date of his termination. (*Id.*, Ex. 2 at 3.) Plaintiff's pursuit of his remedies under the grievance process was not timely and constitutes a failure to exhaust his remedies under the collective bargaining agreement. *See Carr v. Pacific Mar. Ass'n*, 904 F.2d 1313, 1317 (9th Cir. 1990) ("Failure to utilize the grievance procedures, or to invoke them in a timely

6

manner, bars grievants from pursuing remedies in court.").

Plaintiff's pursuit of an MSPB appeal also constitutes a failure to exhaust his remedies under the collective bargaining agreement's grievance process. Section S-11 I of the collective bargaining agreement states:

> If an appeal or formal complaint with respect to an action, matter, or proposed action is or has been filed under a separate procedure provided by law or federal regulation, a grievance regarding such action, matter, or proposed action will not be considered or, if in process, will not be further considered or decided under this Agreement.

(1st McClure Decl., Ex. 1.) Appeals of federal government personnel decisions to the MSPB is provided for by federal law, *see* 5 U.S.C. §§ 1201-04, and the decisions at each level of the grievance appeals process held that plaintiff's election to appeal his termination to the MSPB contractually prohibited review of his termination under the grievance process, (1st McClure Decl., Ex. 2 at 3-7; 2d McClure Decl. ¶¶ 2, 4). Because section S-11 I prevents consideration under the grievance procedures of any matter appealed to MSPB, plaintiff's filing an MSPB appeal prevents him from exhausting the remedies available under the collective bargaining agreement.

Plaintiff argues that TVA waived the failure to exhaust defense by repudiating arbitration when the Engineering Association requested it. (Pl.'s Sept. 27 Brief at 2.) Plaintiff argues that if TVA had agreed to arbitrate, the arbitrator could have decided whether plaintiff's deadline for filing a grievance was equitably tolled by his having filed a timely MSPB appeal. (*Id.*) Plaintiff maintains that TVA's December 11, 2000, decision not to arbitrate despite the Engineering Association's request constitutes a repudiation of the grievance procedure.

7

Although, generally, an employee must attempt to exhaust contractual remedies prior to bringing suit against his employer, "an employee may bring suit even absent exhaustion if the employer *repudiates* the contractual remedies." *Turner v. American Fed'n of Teachers Local 1565*, 138 F.3d 878, 882 (11th Cir. 1998) (emphasis in original). When an employer has repudiated contractual remedies, it "is estopped by [its] own conduct to rely on the unexhausted grievance and arbitration procedures as a defense to the employee's cause of action." *Id.* (quoting *Vaca v. Sipes*, 386 U.S. 171, 185-86 (1967)). Describing the limited nature of the repudiation exception to the exhaustion requirement, the Eleventh Circuit has stated that:

> if the pursuit of an administrative remedy became **truly impossible**, appellant could have sought to demonstrate that he qualified for an exception to the exhaustion requirement. Employees can avail themselves of remedies in federal court without exhausting administrative remedies if their employer repudiates the grievance machinery . . . .

*Pyles v. United Air Lines, Inc.*, 79 F.3d 1046, 1052 (11th Cir. 1996) (emphasis added). Although plaintiff characterizes TVA's refusal to arbitrate as a "repudiation" of the grievance procedures, plaintiff does not qualify for this exception to the exhaustion requirement. TVA's refusal to arbitrate could not have been the cause of plaintiff's failure to exhaust his contractual remedies. Plaintiff's failure to exhaust arose from his failure to file a grievance within twenty days of learning of the proposed action and his pursuit of an MSPB appeal, during the summer of 2000. TVA's refusal to arbitrate on December 11, 2000, could not possibly have been the cause of plaintiff's failure to file a timely grievance. Plaintiff's claim that he was prevented from exhausting his grievance remedies due to an alleged repudiation by TVA is without merit. Therefore, plaintiff's claims are  due to be dismissed for failure to exhaust administrative

remedies unless the time limit for filing the grievance should be equitably tolled.

## B. Equitable Tolling

Plaintiff also argues that section S-11 B's 20-day filing period should be tolled during the pendency of his MSPB appeal because plaintiff's MSPB filing was timely under MSPB procedure. (Pl.'s Sept. 27 Brief at 4.) Notwithstanding the fact that plaintiff's MSPB filing was timely, equitable tolling is not appropriate in these circumstances because there was nothing to toll when plaintiff filed his MSPB appeal. Plaintiff filed his MSPB appeal on August 12, 2000, (Hollingsworth Aff. ¶ 10), fifty-four days after he was notified of his termination and twenty-three days after the effective date of his termination, (*see* 1st McClure Decl., Ex. 2 at 1). Because the collective bargaining agreement required plaintiff to file his grievance "within 20 calendar days after [learning] of the action or proposed action," (*id.*, Ex. 1), plaintiff's time to file a grievance expired before he filed his MSPB appeal.

Plaintiff's MSPB filing cannot work to toll his time for filing a grievance because his right to file a grievance had expired before he filed his MSPB appeal. *Cf. Caviness v. Derand Res. Corp.*, 983 F.2d 1295, 1302 (4th Cir. 1993) (Because all claims "had already been barred at the time of [the questionable action] . . . we need not consider whether, as a general matter, equitable estoppel is appropriate" to toll the filing date.). Plaintiff was fully aware of his right to file a grievance before his deadline for filing a grievance expired because he discussed his "appeal options with [his union representative] on several occasions beginning with the first time [he] received notice" of his pending termination. (*See* Hollingsworth Aff. ¶ 6.) Although plaintiff argues that tolling is appropriate because the Engineering Association gave him "incorrect advice about the availability of the Board appeal," (Pl.'s Sept. 27 Brief at 3), there is

no indication that defendant or any of its agents misled plaintiff about his appeal options. Because equitable tolling does not revive plaintiff's expired grievance rights, plaintiff's claims are due to be dismissed for failure to exhaust administrative remedies.

## F.  Civil Service Reform Act of 1978 ("CSRA")

Because he failed to exhaust the administrative remedies provided by the collective bargaining agreement, plaintiff has no cognizable claim against TVA for a violation of the collective bargaining agreement and no right to compel arbitration of his claims.  Any other claim plaintiff might allege against TVA would arise solely from the termination of his federal employment.  The Eleventh Circuit has consistently held that "the 'CSRA established a comprehensive system for reviewing personnel action taken against federal employees' . . . and that Congress deliberately excluded certain employees from the provision establishing administrative and judicial review for adverse personnel action."  *Lee v. Hughes*, 145 F.3d 1272, 1275 (11th Cir. 1998) (citing *United States v. Fausto*, 484 U.S. 439, 454 (1988)).

In *Fausto*, the Supreme Court held that under the CSRA a nonveteran in the excepted service, such as plaintiff, does not have the right "to demand judicial review for the type of personnel action [, termination for cause,] covered by that chapter."[4]  484 U.S. at 448. In *Hill v. TVA*, 842 F. Supp. 1413 (N.D. Ala. 1993), this court confronted a similar situation. The plaintiff in *Hill* was a manager at Browns Ferry.  Following investigation of an incident at that plant, TVA terminated his employment for violation of nuclear policies and for "his providing of misleading information" to TVA.  *Hill*, 842 F. Supp. at 1416.  The court dismissed

---

[4] Plaintiff's attempt to bypass this bar by citing to 5 U.S.C. § 7121(g) is unavailing because the statute does not apply to TVA.  5 U.S.C. § 7103(a)(3)(E).

10

the plaintiff's claims on the grounds that the CSRA bars personnel-related suits by federal

employees:

> In *United States v. Fausto*, 484 U.S. 439, 108 S. Ct. 668, 98 L.Ed.2d 830
> (1988), the Supreme Court established that the Civil Service Reform Act
> ("CSRA") precludes this court from reviewing any personnel actions involving
> federal employees in the excepted service under the auspices of state tort law
> claims.  Courts have held that TVA employees are federal employees within the
> excepted service, under 5 U.S.C. § 2103, and *thus precluded from a judicial
> determination of personnel-related suits by Fausto.*

> Considering the courts' broad interpretation as to the applicability of
> CSRA, its preclusive effect encompasses more the [sic] merely disputes as to the
> reasons of termination as argued by plaintiff. *Broughton v. Courtney*, 861 F.2d
> 639, 641 (11th Cir.1988); 5 U.S.C. § 2302(a)(2)(A).  Where the plaintiff's claims
> arose out of their employment relationship with the federal government and all
> actions taken by the defendants were related to the plaintiff's status as a federal
> employee, the actions constitute personnel decisions under CSRA, 5 U.S.C.
> § 2302(a)(2)(A). *Rollins v. Marsh*, 937 F.2d 134, 138 (5th Cir. 1991).

842 F. Supp. at 1416-17 (emphasis added) (citation omitted) (footnote omitted).  In *Stephens v.*

*Department of Health & Human Services*, the Eleventh Circuit reached the same result:

> In *United States v. Fausto*, 484 U.S. 439, . . .  the Court held than [sic] an exempt,
> non-preference, federal employee, who had exhausted his administrative
> grievance procedures and was not provided further avenues for relief or appeal
> under the administrative review provisions of the CSRA, did not have a right to
> bring an action in federal court against the government for the alleged prohibited
> personnel practice. *Id.* at 447-52, 108 S. Ct. at 677-79. . . .  The court held that
> the CSRA was now the exclusive remedy of the federal employee.

901 F.2d 1571, 1575 (11th Cir. 1990).

The Supreme Court has specifically held that judicial review of federal employment

claims is precluded, regardless of the alleged merits of the underlying case:

> Perhaps the government employer's dismissal of the worker may not be fair, but
> ordinary dismissals from government service which violate no fixed tenure or
> applicable statute or regulation are not subject to judicial review even if the
> reasons for the dismissal are alleged to be mistaken or unreasonable.

*Connick v. Myers*, 461 U.S. 138, 146-47 (1983). Any claim plaintiff might assert independently of the collective bargaining agreement is also due to be dismissed.

## CONCLUSION

For the reasons stated herein, the court concludes that TVA's motion to dismiss plaintiff's amended complaint, which addresses all remaining claims in this case, is due to be granted. An Order in accordance with this Memorandum Opinion will be entered contemporaneously herewith.

**DONE** this _26th_ day of September, 2002.

Sharon Lovelace Blackburn

**SHARON LOVELACE BLACKBURN**
United States District Judge

12